**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 10-21588-CIV-HUCK/O'SULLIVAN

RANDALL ROGERS, individually and on
behalf of a class of all others similarly
situated,

    Plaintiffs,

v.

OMNI SOLUTION, INC., d/b/a
EISENHAUS and EISENMANN GmbH,

    Defendants.
_____/

## ORDER

    Plaintiff Randall Rogers is suing Defendants Omni Solution, Inc. and Eisenmann GmbH on behalf of a class of similarly situated purchasers of a certain titanium-based exhaust system. Plaintiff alleges causes of action for violations of the Florida Deceptive and Unfair Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Trade Practices Act, breach of the implied warrant of merchantability, breach of the implied warranty of fitness for a particular purpose, unjust enrichment, and declaratory and injunctive relief. Omni Solution filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(2) [D.E. #11] for lack of personal jurisdiction. For the reasons detailed below, the Court may assert jurisdiction over Omni Solution. Therefore, Omni Solution's Motion to Dismiss is denied.

**I.    RELEVANT FACTS**

    **A.    Background Facts**

    Plaintiff Randall Rogers, a citizen of Florida, contacted Defendant Eisenmann GmbH, which is located in Germany, to purchase a titanium exhaust system that he believed was manufactured by Eisenmann in Germany. (Pl.'s Compl. ¶ 4; Rogers Aff. ¶ 5.) Eisenmann advised Rogers that he could purchase the exhaust system through Eisenhaus, their exclusive United States distributor. (Rogers Aff. ¶ 6.) Defendant Omni Solution, which is an Illinois corporation, does business as

Eisenhaus. (Pl.'s Compl. ¶¶ 4, 7.) Omni Solution claimed to be an exclusive distributor of exhaust systems for Eisenmann. (Pl.'s Compl. ¶ 7.) Rogers contacted Omni Solution in an attempt to purchase a titanium exhaust system. (Kang Aff. ¶ 7; Rogers Aff. ¶ 7.) Omni Solution informed Rogers that it would discount his purchase price if he was able to find other individuals to purchase Eisenmann exhaust systems. (Rogers Aff. ¶ 8.) Rogers contacted his cousin in New Jersey, who also was interested in purchasing an Eisenmann exhaust. (Rogers Aff. ¶ 9.) In exchange, Omni Solution discounted the purchase price for both Rogers and his cousin. (Rogers Aff. ¶ 9.) Rogers purchased the exhaust for $2590.44 from Omni Solution using a credit card, either through telephone or via facsimile. (Pl.'s Compl. ¶ 19; Rogers Aff. ¶ 10.) Rogers' exhaust was shipped to Miami Chassis Collision & Alignment, which Rogers alleges was an authorized retailer of Eisenhaus exhausts. (Pl.'s Compl. ¶ 19; Rogers Aff. ¶12.) In May 2009, Rogers discovered that the exhaust system he purchased was not a "true Eisenmann" exhaust system. (Pl.'s Compl. ¶ 20; Rogers Aff. ¶14.) The exhaust system that Omni Solution shipped to Rogers cracked and did not perform as advertised. (Pl.'s Compl. ¶ 19.) Rogers seeks to represent a class "composed of all persons in the State of Florida and throughout the United States . . . who purchased an exhaust system from [Omni Solution] which was represented to be an original Eisenmann GmbH product, but was not." (Pl.'s Compl. ¶ 10.)

      **B.**    **Disputed Jurisdictional Facts**

Rogers alleges that Omni Solution mailed advertising and promotional material to his home address, and disseminated similar material "through the internet, product packaging, and other forms of national and local media." (Pl.'s Compl. ¶ 6.) Omni Solution responds through the affidavit of its President, John Kang, who states that Omni Solution has never maintained an office or other physical presence in Florida, has never maintained a Florida telephone number, and has never had an employee working or living in Florida. (Kang Aff. ¶ 3.) Kang adds that no one from Omni Solution has traveled to Florida for the purpose of conducting or cultivating business or attending trade shows. (Kang Aff. ¶ 4.) Furthermore, in contrast to Rogers' allegations, Kang claims that Omni Solution never disseminated advertising or promotional materials to Florida, and never solicited business in the state. (Kang Aff. ¶¶ 5, 6.) Kang further notes that direct sales to Florida customers represent only a small portion of Omni Solution's total yearly sales revenue—from 2002

to 2009, direct sales to Florida customers comprised between 0% to 2.43% of Omni Solution's yearly sales revenue, totaling more than $95,000 for the period. (Kang Aff. ¶¶ 9–16.)

Rogers does not present evidence to support his initial allegation that Omni Solution sent advertising or promotional activities to his home address; however, Rogers alleges in his supplemental Affidavit that based upon his communications with Omni Solution and his interest in Eisenmann exhausts, Rogers told Omni Solution that he would make himself available to Omni Solution's South Florida customers to display his exhaust system or answer questions about the exhaust system. (Rogers Aff. ¶ 11.) Rogers affidavit states that he "believe[s]" that Omni Solution posted his telephone number somewhere on their website, because subsequent to his offer to make himself available to display his exhaust system or answer questions about the exhaust system, Rogers received two calls from potential Omni Solution customers inquiring about the exhaust system. (Rogers Aff. ¶ 11.)

## II.     ANALYSIS

### A.     Respective Burdens of Proof

A plaintiff who asks a court to exercise personal jurisdiction over a nonresident defendant has the initial burden of alleging in the complaint facts that are sufficient to support a prima facie case of jurisdiction. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). If the defendant challenges jurisdiction by submitting an affidavit in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Diamond Crystal Brands, Inc. v. Food Movers International, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010); *Posner v. Essex Insurance Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). Where the complaint and supporting evidence conflict with the facts as alleged in the defendant's affidavits, "the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands*, 593 F.3d at 1257; *Abramson v. Walt Disney Co.*, 132 Fed. Appx. 273, 275 (11th Cir. 2005). If disparities in the parties' allegations cannot be reconciled through reasonable inferences, the district court should hold an evidentiary hearing to resolve the jurisdictional facts. *Abramson*, 132 Fed. Appx. at 275.

Rogers and Omni Solution dispute whether Omni Solution specifically marketed Eisenmann exhaust systems in Florida. Omni Solution counters Rogers' allegation that it directed advertising and promotional materials to his home address by specifically denying that it directed advertising

3

and promotional materials to any Florida residents. Rogers does not provide affidavit evidence supporting his initial allegation that Omni Solution sent advertising and promotional materials to his home address. Therefore, the Court does not credit Rogers' initial allegation from the Complaint, because Omni Solution specifically denied that it directed advertising and promotional material to Florida residents. *See Diamond Crystal Brands, Inc.*, 593 F.3d at 1257; *Posner*, 178 F.3d at 1214.

However, there are facts on the record that support the reasonable inference that Omni Solution directed sales and marketing activities toward Florida. Specifically, with regard to sales to Florida, Omni Solution telephonically negotiated with Rogers the price of an exhaust system, about which Omni Solution allegedly made materially false statements, and shipped the exhaust system to Rogers in Florida. Omni Solution also admits to having a history of direct sales to the state. Additionally, Rogers' supplemental Affidavit alleges a specific instance when Omni Solution directed marketing activities toward to the state of Florida. Despite Omni Solution's blanket assertion that it conducted no marketing activities in Florida, Rogers' specific factual allegation regarding two individuals contacting him about his exhaust system supports a reasonable inference that Omni Solution did attempt, at least in some small way, to market to customers in Florida; ironically, with Rogers' assistance. *Cf. Diamond Crystal Brands*, 593 F.3d at 1257 ("That a plaintiff first solicited a nonresident defendant does not nullify the significance of a defendant's initiation of subsequent transactions."). The Court notes that Rogers' affidavit relies on assumption rather than factual assertion: Rogers *assumes* that his name was put on Omni Solution's website because he was contacted by two interested persons; however, he *knows* only that he made the offer to act as a reference for the exhaust systems and that subsequently potential customers contacted him about the systems. The Court finds that these facts support a reasonable inference that Omni Solution somehow disseminated Rogers' name to interested customers in an attempt to market the exhaust systems. Moreover, as Omni Solution's counsel acknowledged at a hearing on the Motion to Dismiss, held on October 18, 2010, it is a reasonable inference that Rogers' contact information was communicated by some means by Omni Solution to potential customers in an attempt to market its exhaust systems. The Court further notes that, as discussed above and below, other facts regarding Omni Solution's sales activities sufficiently and independently support the Court's assertion of personal jurisdiction over Omni Solution. *See Abramson*, 132 Fed. Appx. at 275.

### B. Legal Principles Governing Personal Jurisdiction

Omni Solution moves to dismiss for lack of personal jurisdiction. *See* Fed R. Civ. P. 12(b)(2). A federal court sitting in diversity must undertake a two-step analysis to determine whether personal jurisdiction exists: (1) the exercise of jurisdiction must be appropriate under the state's long-arm statute, and (2) the court's exercise of jurisdiction must comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Mazer*, 556 F.3d at 1274. As discussed below, this Court appropriately may assert jurisdiction over Omni Solution.

#### 1. *Florida Long Arm Statute*

The Court has specific jurisdiction over Omni Solution under the Florida long-arm statute because the Complaint and supporting Affidavit sufficiently allege that Omni Solution committed a tortious act within the state. Rogers asserts that Omni Solution, as a nonresident defendant, is subject to specific jurisdiction under the Florida long arm statute, which provides:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: . . .
>     (b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(b).[1] The reach of a state's long-arm statute is a question of state law; therefore, this Court construes the law as would the Supreme Court of Florida. *Mazer*, 556 F.3d at 1274 (citation omitted); *Abramson*, 132 Fed. Appx. at 275. Both the Supreme Court of Florida and the Eleventh Circuit have been clear that "in order to 'commit a tortious act' in Florida, a defendant's physical presence is not required." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *see Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (citing *Wendt* and noting that "jurisdiction may be found in certain instances where an out-of-state defendant commits a tort that produces an injury in Florida"). Furthermore, the Supreme Court of Florida previously has held that allegations of a defendant's violation of the Florida Deceptive and Unfair Trade Practices Act is a tortious act in Florida for the purpose of Fla. Stat. § 48.193(1)(b). *Execu-Tech Business Systems, Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 585 (Fla. 2000)."[2]

---

[1] Because this Court has specific jurisdiction under Fla. Stat. § 48.193(1)(b), it is unnecessary to explore Rogers' argument that the Court also has general jurisdiction over Omni Solution pursuant to Fla. Stat. § 48.193(2), which provides a court with jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."
Furthermore, because Florida's general jurisdiction long arm statute is coextensive with the Fourteenth Amendment's due process requirements, the issue of general jurisdiction necessarily will be settled during the later discussion of due process. *See Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) ("The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment.") (citing *Woods v. Nova Cos. Belize*, 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999). As discussed later, the Court's jurisdiction over Omni Solution comports with due process requirements. Therefore, the Court also may exercise jurisdiction over Omni Solution under Florida's long arm general jurisdiction statute. *See* Fla. Stat. § 48.193(2).

[2] The Court takes this opportunity to remind Omni Solution's counsel of his obligations under Rule 11. In its Motion to Dismiss, Omni Solution argues that it cannot have committed a tortious act within Florida because "the record evidence makes clear that Omni Solution does not <u>act</u> within this state, let alone act tortiously." This position is untenable given that both the Supreme Court of Florida and the Eleventh Circuit recognize that a defendant's presence within Florida is not predicate to acting tortiously in the state, and the Supreme Court of Florida specifically addressed this issue with regard to the Florida Deceptive and Unfair Trade Practices Act.

The Court has specific jurisdiction over Omni Solution pursuant to Fla. Stat. § 48.193(1)(b) because Rogers pleads facts alleging that Omni Solution acted tortiously in violating the Florida Deceptive and Unfair Trade Practices Act, thereby causing injury in Florida. The Supreme Court of Florida's decision in *Execu-Tech* leaves little doubt that a violation of the Florida Deceptive and Unfair Trade Practices Act, which causes injury in Florida, confers jurisdiction under Florida's long arm statute. In *Execu-Tech*, the plaintiff alleged that manufacturers of fax paper, including Defendant New Oji, conspired to fix the wholesale price of their product throughout the United States, including in Florida. 752 So. 2d at 585. In that sense, the injury was felt in Florida, even though New Oji was a Japanese corporation that sold paper only in Japan and maintained no office in Florida. *Id*. at 584–85. In the same vein, in *Horizon Aggressive Growth*, the plaintiff alleged that defendant made out-of-state communications into Florida which were tortious because they were made with intent to deceive and defraud the Florida plaintiff. 421 F.3d at 1168. The Eleventh Circuit found that these communications satisfied the plaintiff's burden of alleging facts supporting jurisdiction, because the tortious action was felt in Florida. *Id*. at 1169.

In the present case, Rogers successfully alleges that Omni Solution committed a tortious act in Florida. Rogers states that Omni Solution communicated to him—into Florida—that the product he was purchasing was a genuine Eisenmann titanium exhaust system. (Rogers Aff. ¶¶ 7, 8.) He also alleges that Omni Solution "violated the [A]ct by engaging in deceptive and unconscionable conduct" by selling to him an inferior, counterfeit product. (Pl.'s Compl. ¶¶ 19, 20, 29.) Violation of the Act is a tortious act. *Execu-Tech*, 752 So. 2d at 585. Similar to *Execu-Tech* and *Horizon Aggressive Growth*, the injury was felt by the plaintiff, Rogers, in Florida even though Omni Solution is a company that performed its side of the deal from another state. Moreover, Omni Solution shipped its exhaust to Miami Chassis Collision & Alignment, which Rogers alleges was an authorized retailer of Eisenhaus exhausts. (Pl.'s Compl. 19; Rogers Aff. ¶ 12.) The fact that Omni Solution primarily functions in a different state does not preclude it from being subject to this Court's jurisdiction for its tortious actions within Florida. Therefore, the Court properly has specific jurisdiction over Omni Solution pursuant to Fla. Stat. § 48.193(1)(b).

### *2.     Federal Due Process Considerations*

For the reasons detailed below, the Court's exercise of personal jurisdiction over Omni Solution comports with the Due Process Clause of the Fourteenth Amendment. A court's exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment if the "non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). To satisfy due process requirements in a case involving specific jurisdiction, the defendant's contacts with the forum state (1) "must be related to plaintiff's cause of action or have given rise to it"; (2) "must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum"; and (3) "must be such that the defendant should reasonably anticipate being haled into court there." *Sloss Industries v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (internal quotations omitted); *see Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1251–52 (11th Cir. 2000).

The cases that the parties cite are not helpful to the Court, given their factual dissimilarity to the events of this case, where a nonresident defendant shipped goods to a resident plaintiff. *Cf. Sloss Industries*, 488 F.3d at 930 n.10 (noting that the specific factual settings of cases matter for the purposes of personal jurisdiction, because in such cases even "non-resident purchasers are not treated the same as non-resident sellers"). Instead, the Court looks to other precedent from the Eleventh Circuit and its predecessor court, the former Fifth Circuit. These cases indicate that when a seller of goods has "absolute knowledge" that the goods it shipped to a forum state will be purchased by a consumer in the state, the exercise of personal jurisdiction comports with due process. *Austin v. North American Forest Products*, 656 F.2d 1076, 1089–91 (5th Cir. Unit A 1981). However, when a defendant literally has no contacts with a forum other than contracting with a forum's resident to whom the defendant does not even ship the contracted-for goods, such a transaction does not provide sufficient minimum contacts to satisfy due process requirements. *Banton Industries v. Dimatic Die & Tool Co.*, 801 F.2d 1283, 1284–85 (11th Cir. 1986); *see Diamond Crystal Brands*, 593 F.3d at

8

1271 (defining *Banton*'s holding); *Sloss Industries*, 488 F.3d at 931 (distinguishing *Banton* because the defendant in *Sloss* had involvement in the shipping process, unlike the defendant in *Banton*).

Although it is a close case, precedent from the Eleventh Circuit and the former Fifth Circuit indicates that Omni Solution has enough contacts with Florida for this Court to assert jurisdiction over the company in compliance with due process requirements. Although Omni Solution does not have a significant business presence in Florida, it negotiated the sale of goods to a customer who was in the state. (Rogers Aff. ¶¶ 8, 9.) It also shipped the exhaust system that Rogers purchased to a retailer in Florida, and directed two potential customers to Rogers for a reference regarding the exhaust system. (Pl.'s Compl. ¶ 19; Rogers Aff. ¶¶ 11, 12.) By negotiating a contract with a Florida resident, making the alleged misrepresentation about the quality of the exhaust system during the negotiations, shipping the goods to a dealer in Miami, and using Rogers as a reference for the exhaust system, Omni Solution's interactions with Rogers indicate that it purposefully availed itself of the privilege of doing business in Florida. *See Sloss Industries v. Eurisol*, 488 F.3d at 925. Moreover, Omni Solution's affidavit evidence indicates that from 2002 to 2009 it benefitted from direct sales to Florida residents totaling more than $95,000. (Kang Aff. ¶¶ 9–16.) Although that sum represents only a small portion of its total yearly revenues, it indicates a sustained effort by Omni Solution to conduct business in the state, such that Omni Solution should have reasonably anticipated being haled into court in Florida by reason of its defective and counterfeit products. *See Sloss Industries*, 488 F.3d at 925. All told, Omni Solution's contacts with Florida indicate a concerted effort to sell and market its products to customers in Florida, which subjects it to this Court's jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980):

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to service, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

The Court notes that Omni Solution is far from the position of the defendant in *Banton*, a Nebraska company that contracted with an Alabama company but did not even ship the contracted

9

goods to Alabama, the forum state. 801 F.2d at 1284. Instead, the *Banton* defendant shipped the goods F.O.B. Omaha. *Id*. Although the businesses had similar prior dealings, the defendant had no other contacts with Alabama. *Id*. at 1284. The Eleventh Circuit found that these actions were "too insignificant" to subject the defendant to Alabama jurisdiction. *Id*. at 1285. Importantly, the Eleventh Circuit has clarified that *Banton* is a narrow holding. In *Diamond Crystal Brands*, the court noted that "*Banton* held only that when the defendant's sole contact with the forum is contracting with a forum resident, even a history of transactions does not provide sufficient minimum contacts." 593 F.3d at 1271. In *Sloss Industries*, the Eleventh Circuit distinguished the *Banton* defendants from the defendant in that case, because the *Banton* defendants were not involved in the shipping process, while the *Sloss Industries* defendant was. 488 F.3d at 931. Essentially, *Banton* stands for the proposition that a defendant who has absolutely no contacts with the forum state, other than contracting with a party in that state, does not have sufficient minimum contacts with the state to satisfy due process requirements.

      The present case is far more factually similar to *Austin v. North American Forest Products*, which involved a manufacturer's sale of exterior doors to Louisiana to be installed in a housing project. The manufacturer was a Delaware corporation that had no business contacts with Louisiana. *Austin*, 656 F.2d at 1089. The manufacturer sold the doors to a non-Louisiana subcontractor, who delivered them to the contractor that was installing the doors in Louisiana. *Id*. at 1078–80. In deciding that jurisdiction was proper, the Eleventh Circuit's predecessor court focused on the nature and quality of the manufacturer's contacts with Louisiana, without regard to the quantity of goods shipped to the forum state. *Id*. at 1090–91. It was significant that the manufacturer "unquestionably knew that the doors it manufactured were to be used in a housing facility in . . . Louisiana." *Id*.; *see Banton*, 801 F.2d at 1285 (Anderson, Cir. J., dissenting) (reminding the court that *Austin* stood for the proposition that "[w]here a seller of goods has 'absolute knowledge' that its products will be purchased by a consumer in the forum state . . . the exercise of personal jurisdiction over the nonresident seller comports with due process"). The court noted that such knowledge evidenced that the manufacturer "engage[d] in the kind of purposeful, deliberate activity contemplated by due process considerations." *Id*. at 1091. Thus, the contacts with Louisiana "[could] not be considered

merely fortuitous[,]" and the acts performed by the manufacturer outside of Louisiana "certainly had foreseeable consequences within the state." *Id*.

Omni Solution's connection to Florida is far more direct than was that of the *Austin* defendant to Louisiana. Omni Solution had knowledge that its product would be used in Florida, negotiated a contract with a Florida resident, and shipped the product directly to Rogers in Florida. By its own admission, Omni Solution also has a history of other *direct* sales to Florida residents. Omni Solution has at least as many contacts with the forum state as did the knowledgeable seller in *Austin*. Furthermore, as discussed above, Omni Solution concedes that it is reasonable for this Court to infer that Omni Solution attempted to market its exhaust systems by directing two potential Florida customers to Rogers for a reference regarding the exhaust systems. (*See* Rogers Aff. ¶¶ 11.) Therefore, Omni Solution is not akin to the passive purchaser in *Banton*. *See also Diamond Crystal Brands*, 593 F.3d at 1271, and *Sloss Industries*, 488 F.3d at 933 (both discussing how a nonresident defendant was far from a "passive purchaser" because it took actions in the forum state more substantial than merely contracting with a company in the forum state). Thus, the Court's exercise of jurisdiction over Omni Solution comports with the Due Process Clause of the Fourteenth Amendment.

## III.    CONCLUSION

For the foregoing reasons, the Court properly may assert jurisdiction over Defendant Omni Solution. Therefore, Omni Solution's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(2) is DENIED.

DONE AND ORDERED in Chambers, Miami, Florida, on October 19, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record